**In re Larry L. TREXLER and Yvonne R. Trexler, f/k/a Yvonne R. Lehr, Husband and Wife, Debtor.**

**Bankruptcy No. 88–21242T.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 8, 1989.

Jon M. Saltzman, Saltzman Law Offices, Allentown, Pa., for debtor.

Charles J. Phillips, Mogel, Speidel, Bobb & Kershner, Reading, Pa., for movant.

Allan B. Goodman, Bethlehem, Pa., trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Before the court is a motion filed by Sears, Roebuck and Co. ("movant"), seeking relief from the automatic stay under 11

merit.

U.S.C. § 362(d) so that it may proceed to repossess certain personalty of the debtor. Because we find that movant is a secured creditor and has met its burden of proof under 11 U.S.C. § 362(d)(2), we grant Sear's motion, thus enabling it to pursue its rights in the subject collateral under state law.

The parties have stipulated to the following facts, and hence, no hearing was held. On October 16, 1986, debtor, Larry L. Trexler ("debtor"), opened a revolving charge account with movant by executing a credit account application and a security agreement. The security agreement provides that movant retains a security interest in all merchandise charged to the account and that if payments are not made as required, movant can repossess only the merchandise which has not been fully paid. The security agreement also contains a provision which explains how payments will be allocated among purchases. This provision provides that payments will be credited first towards any unpaid finance charge and then to the earliest charges on the account.[1]

Thereafter, debtor used his charge account with movant to purchase various consumer and household goods. At the time of each purchase, debtor executed a sales invoice which specified that the purchase was made under the terms of the security agreement and that movant retained a security interest in the merchandise until fully paid. As of the time debtor filed his bankruptcy petition, debtor owed movant $873.32 on his account. Debtor acknowledges that no equity exists in the consumer and household goods purchased under the account.

Instantly, debtor signed a security agreement[2] which gave movant a security interest in everything purchased by debtor under his charge account.[3] Since the security interest was taken or retained by movant as seller of the collateral to secure its price, the security interest is a purchase money security interest under the Pennsylvania Uniform Commercial Code. *See,* 13 Pa.C.S.A. § 9107; *Pristas v. Landaus of Plymouth, Inc. (In re Pristas),* 742 F.2d 797 (3rd Cir.1984); *Breakiron v. Ward (In re Breakiron),* 32 B.R. 400 (Bankr.W.D.Pa. 1983). Furthermore, the security agreement provides that each item purchased stands as security only for its own debt and contains a method to allocate payments so it may be determined when the purchase price of each item is paid in full. Accordingly, movant's security interest retains its purchase money character. *In re Pristas, supra; In re Breakiron, supra.*

As movant is a secured creditor, it has standing to seek relief from the automatic stay under 11 U.S.C. § 362(d)(2). It is well established that to obtain relief under § 362(d)(2), a secured creditor has the burden of demonstrating the debtor's lack of equity in the collateral. Once this element is established, the burden shifts to the debtor to prove that the secured property is necessary for an effective reorganization that is in prospect. *See,* 11 U.S.C. § 362(g); *In re Rorie,* Bankr. No. 88–11097F (Bankr. E.D.Pa. December 21, 1988); *In re Kalfas,* Bankr. No. 88–11455F (Bankr.E.D.Pa. October 14, 1988).

In the case before us, the stipulation of facts provides that debtor has no equity in the collateral, but is silent on whether the collateral is necessary for an effective reorganization. In fact, debtor utterly failed to present any evidence or argument regarding the necessity of the collateral to an effective reorganization. As such, we

---

1. This allocation method is known as the "first-in first-out" ("fifo") method.

2. Section 9105 of the Pennsylvania Uniform Commercial Code defines security agreement as "an agreement which creates or provides for a security interest." 13 Pa.C.S.A. § 9105.

3. Debtor never attacked the underlying validity of the security agreement by arguing that he never consented to the creation of the security interest. Because debtor presented no evidence or argument on this issue, we will not address it. We do note, however, that several other bankruptcy courts have upheld the validity of movant's standard security agreement. *See, In re Moody,* 62 B.R. 282 (Bankr.N.D.Miss.1986); *Matter of Orecchio,* 54 B.R. 685 (Bankr.D.N.J. 1985); *Tucker v. Sears, Roebuck & Co. (In re Tucker),* 36 B.R. 706 (Bankr.S.D.Ill.1984); *In re Schwartz,* 27 B.R. 195 (Bankr.S.D.Oh.1982).

208

must find that movant met its burden of proof, thereby shifting the burden to debtor; that debtor failed to meet his burden of proof; and that movant is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2).

An appropriate order will follow.